UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
EDWARD MINTZ,                      )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )   Civil Action No. 09-1894 (PLF)
                                   )
FEDERAL DEPOSIT INSURANCE          )
CORPORATION,                       )
                                   )
        Defendant.                 )
_____)

MEMORANDUM OPINION

This matter is before the Court on the motion of the defendant, the Federal Deposit Insurance Corporation ("FDIC"), to dismiss the plaintiff's complaint. In connection with its motion to dismiss, the FDIC has also filed a motion requesting that the Court take judicial notice of a statement contained in an SEC filing. Plaintiff Edward Mintz has responded to the defendant's motions by filing a motion of his own, one that seeks a stay of these proceedings pending the outcome of a related bankruptcy proceeding in federal court in Delaware. After consideration of the parties' arguments, the relevant law, and the entire record in this case, the Court will grant the FDIC's motion to dismiss the complaint and deny the remaining motions as moot.[1]

---

[1] The following papers were reviewed in connection with the pending motions: plaintiff's complaint ("Compl."); Compl., Ex. 1 at 1 (entitled "Exhibit A to Claim of Edward Mintz and All Similarly Situated Persons") ("Ex. A"); Compl., Ex. 3 ("Warrant Agreement"); Compl., Ex. 4 (Dime Bancorp prospectus issued on December 26, 2000) ("Prospectus"); defendant's motion to dismiss the complaint ("MTD"); plaintiff's motion for stay; FDIC-Receiver's request to take judicial notice; defendant's reply in support of its motion to dismiss; plaintiff's reply to defendant's opposition to his motion to stay ("Pl.'s Reply"); and defendant's

I. BACKGROUND

*A. Dime Bancorp and Litigation Tracking Warrants*

According to his complaint and the various documents attached to and incorporated into it, plaintiff Edward Mintz is a former shareholder of the now-defunct Dime Bancorp, Inc., the holding company of Dime Savings Bank of New York, FSB ("Dime Savings"). See Ex. A; Warrant Agreement at 2. In 1995 Dime Bancorp acquired Anchor Savings Bank ("Anchor"), which merged into Dime Savings. Ex. A; Prospectus at 1. After the merger, Dime Savings, as the legal successor to Anchor, pursued certain legal claims against the United States in Anchor's name ("the Anchor Litigation"). Prospectus at 1. The damages claimed by Dime Savings under alternative theories of liability were substantial, ranging from $512 million to $980 million. Id.

In 2000, several years before the Anchor Litigation yielded an initial judgment, the Board of Directors of Dime Bancorp announced that it wished to "pass along the potential value of our claim against the government to our existing shareholders in the form of tradeable securities." Prospectus at 1. To realize that goal, Dime Bancorp released a "Warrant Agreement," a contract among Dime Bancorp itself, EquiServe Trust Company, N.A., and EquiServ Limited Partnership. Warrant Agreement at 1. Pursuant to that agreement, EquiServe Trust Company, N.A., and EquiServ Limited Partnership (collectively referred to as "the Warrant Agent") issued to each holder of Dime Bancorp's common stock a number of "Litigation Tracking Warrants" ("LTWs") equal to the number of shares of common stock held by that shareholder. Id. at 4. By their terms, those warrants would become exercisable only if (1) Dime

supplemental memorandum in support of its motion to dismiss.

Savings won a final judgment in the Anchor Litigation; (2) the amount of damages awarded to Dime Savings as part of that judgment ("the Anchor Award") exceeded various litigation and other costs incurred by Dime Bancorp and/or Dime Savings; and (3) Dime Bancorp received any necessary regulatory approval for the issuance of the common stock underlying the LTWs. Id. at 3.

In the event that the warrants did become exercisable, each LTW would confer upon its holder the right to purchase at par value that number of Dime Bancorp common shares whose aggregate stock price equaled a certain portion of the Anchor Award divided by the total number of LTWs issuable under the Warrant Agreement. Warrant Agreement at 7. In other words, the number of shares for which an LTW would be exercisable was directly dependent on the size of the Anchor Award.

In January of 2002, Dime Bancorp was acquired by Washington Mutual, Inc. ("WM Inc."), the holding company of Washington Mutual Bank ("WM Bank"). Ex. A; see Am. Nat'l Ins. Co. v. JPMorgan Chase & Co., Civil Action No. 09-1743, 2010 WL 1444533, at *1 (D.D.C. Apr. 13, 2010) (explaining that WM Inc. is the former holding company of WM Bank).[2] Several years later, in 2008, the United States Court of Federal Claims determined that Anchor Savings Bank was entitled to receive approximately $356,455,000 in damages from the United

---

[2] While the plaintiff does not actually explain the relationship between Washington Mutual Bank and Washington Mutual, Inc. in his pleadings, the Court takes judicial notice of this highly relevant and easily verifiable fact. See Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007) ("In determining whether a complaint states a claim, the court may consider facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." (citation and internal quotation marks omitted)); United States v. Philip Morris USA, Inc., Civil Action No. 99-2496, 2004 WL 5355971, at *1 (D.D.C. Aug. 2, 2004) ("Judicial notice may be taken of historical, political, or statistical facts, or any other facts that are verifiable with certainty.").

3

States. See Anchor Sav. Bank, FSB v. United States, 597 F.3d 1356, 1360 (Fed. Cir. 2010); see generally Anchor Sav. Bank, FSB v. United States, 81 Fed. Cl. 1 (Fed. Cl. 2008). That determination was largely upheld on appeal, although the Federal Circuit remanded the case, instructing the Claims Court to reexamine its calculation of the damages award to discern whether the award should not in fact be larger. See Anchor Sav. Bank, FSB v. United States, 597 F.3d at 1373-74.

On September 25, 2008, after the Claims Court had issued its initial award in the Anchor Litigation, the United States Office of Thrift Supervision closed WM Bank and placed it in receivership, with the FDIC as its receiver. Compl. ¶ 16. The next day, WM Inc. filed a petition for bankruptcy, initiating a complex case in the United States Bankruptcy Court for the District of Delaware. See In re Washington Mutual, Inc., Case No. 08-12229, Voluntary Petition (Chapter 11) at 1 (Bankr. Del. Sept. 26, 2008). The FDIC, WM Inc., and JPMorgan Chase Bank, National Association, which acquired WM Bank from the FDIC, are currently vigorously contesting in the Delaware proceedings the proper disposition of various assets held by WM Inc. and/or WM Bank. Compl. ¶¶ 4, 18.

*B. Mr. Mintz's Claim*

Parties who wish to assert an interest in the assets of a failed financial institution for which the FDIC acts as a receiver may file a claim for review by the FDIC. See 12 U.S.C. § 1821(d)(5)-(6). The FDIC will allow the claim if it is timely and "is proved to the [FDIC's] satisfaction." Id. § 1821(d)(5)(B).

Mr. Mintz alleges that he owns some of the LTWs issued by Dime Bancorp. Ex. A. On December 29, 2008, he filed an administrative claim with the FDIC on behalf of himself

4

and "all similarly situated parties." Id. His claim documents made no specific request for particular action by or payments from the FDIC in its capacity as WM Bank's receiver, but instead stated that Mr. Mintz and other warrant holders "have or might have claims against" WM Bank because "a [WM Bank] affiliate or a successor in interest may intend to assert ownership of the [Anchor] Litigation damage recovery and unjustly disregard legal obligations arising under the litigation tracking warrants." Id. Mr. Mintz submitted a copy of the Warrant Agreement as part of his claim. See Ex. 1.

In a letter dated August 6, 2009, the FDIC informed Mr. Mintz that it had disallowed his claim because it had "not been proven to the satisfaction of the Receiver." Ex. 2. Mr. Mintz then filed a complaint in this Court. In that complaint Mr. Mintz purports to act on behalf of "all holders of the [Litigation Tracking] Warrants," Compl. ¶ 22, and alleges that "the FDIC . . . may be the successor to Dime Bancorp, Inc. and WMB, and would therefore be subject to the Warrants and related agreements." Id. ¶ 18. He asserts that the FDIC has engaged in conduct amounting to breach of contract or anticipatory breach of contract because it "is asserting full ownership of the proceeds of the *Anchor Savings Bank* case, in violation of its obligations under the Warrants and related agreements." Id. ¶¶ 31-37.

## II. DISCUSSION

### A. Standard of Review

The FDIC has moved to dismiss Mr. Mintz's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. While the FDIC's arguments concerning the sufficiency of Mr. Mintz's complaint under Rule 12(b)(6) relate to his individual claims, its argument predicated on Rule 12(b)(1) attacks only Mr. Mintz's attempt to serve as the

representative of a class of similarly situated persons. See MTD at 6-9. Because the Court finds that Mr. Mintz's complaint fails to state a claim upon which relief may be granted, it will dismiss the complaint on that ground. It therefore will not discuss the FDIC's arguments regarding subject matter jurisdiction over the plaintiff's class claims.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Id. at 544 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Aktieselskabet AF 21 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court stated that there was no "probability requirement at the pleading stage," Bell Atlantic Corp. v. Twombly, 550 U.S. at 556, but "something beyond . . . mere possibility . . . must be alleged[.]" Id. at 557 The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 555, because Rule 8(a)(2) requires a "showing," rather than a "blanket assertion," of entitlement to relief, id. at 555 n.3. The complaint must be sufficient "to state a claim for relief

6

that is plausible on its face." Id. at 570. The Court referred to this newly clarified standard as "the plausibility standard." Id. at 560 (abandoning the "no set of facts" language from Conley v. Gibson).

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. at 94; see also Bell Atlantic Corp. v. Twombly, 550 U.S. at 555. The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. See Kowal v. MCI Communications Corp., 16 F.3d at 1276; Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

*B. Liability of the FDIC*

Mr. Mintz has not advanced any tenable legal theory under which the FDIC might be liable to him, nor has he alleged in his complaint any facts from which such a theory could be inferred. According to his complaint, the FDIC is or may be "the successor in interest to [WM Bank]," Compl. ¶ 34, and if that is the case, the FDIC "must abide by its obligations to the holders of the Warrants." Id. ¶ 37. That claim fails because the facts alleged in Mr. Mintz's complaint lay no foundation for the argument that WM Bank had any obligation to the holders of the warrants issued by Dime Bancorp. The Agreement pursuant to which those warrants were issued created certain legal obligations to be fulfilled by Dime Bancorp. Because, as the complaint itself alleges, Dime Bancorp was acquired in 2002 by WM Inc., it could be plausibly

7

inferred at the motion-to-dismiss stage that WM Inc. might have succeeded to those obligations. But Mr. Mintz's allegations target not WM *Inc.*, but the separate entity WM *Bank*.

The complaint does not allege that WM Bank was the acquirer of Dime Bancorp. Nor does it allege any other sort of relationship between those two entities, contractual or otherwise, that might confer liability for Dime Bancorp's obligations under the Warrant Agreement upon WM Bank. Mr. Mintz's unsupported assertion that WM Bank and "possibly the FDIC" are the "successors and assigns" of Dime Bancorp, Compl. ¶ 20, does not cure this deficiency; that assertion is a mere "legal conclusion[] cast in the form of [a] factual allegation[]." Browning v. Clinton, 292 F.3d at 242 (citation and internal quotation marks omitted); see In re IndyMac Mortgage-Backed Securities, Civil Action No. 09-4583, 2010 WL 2473243, at *8 (S.D.N.Y. June 21, 2010) (rejecting a "successor-in-interest allegation . . . without any factual amplification" as "'nothing more than a legal conclusion . . . and so . . . not entitled to the assumption of truth'" (citations omitted)).

Mr. Mintz's only attempt to explain how the circumstances described in his complaint could give rise to liability on the part of WM Bank and, by extension, the FDIC is unpersuasive. According to the plaintiff,

> [u]nder the appropriate reading of the Litigation Tracking Warrants, the issuance of the stock is a condition precedent to the ability of the Bank or anyone to obtain the proceeds of the *Anchor Litigation*. The intent of the Litigation Tracking Warrants was to give to the then-shareholders of Dime Bancorp, Inc., *not the bank*, 85% of the benefits of the Anchor Savings Bank Litigation. The Litigation Tracking Warrant Holders are the only successors to the Dime Bancorp, Inc. shareholders. At the appropriate time the Plaintiff can produce full briefs supported by witnesses who participated in the issuance of the Litigation Tracking Warrants to verify that reading and intent.

Pl.'s Reply at 2 (emphasis in original). Even if the Court assumes the veracity of the strained interpretation of the Warrant Agreement urged by Mr. Mintz, that interpretation does not translate into potential liability for the FDIC. If no entity may receive the Anchor Award until the LTWs are exchanged for stock, then the FDIC or any other potential claimant to the Award would seem to be barred from obtaining it until the warrants are exercised (if they ever are) — but limitations on the ability of the FDIC to obtain the Award are not obligations to the warrant holders.

Because the allegations in Mr. Mintz's complaint are not sufficient to provide fair notice of the grounds upon which the FDIC's liability plausibly may be predicated, see Bell Atlantic Corp. v. Twombly, 550 U.S. at 555-56, the complaint must be dismissed. The dismissal of the complaint renders moot the plaintiff's motion to stay and the defendant's motion for judicial notice; as a result, those motions will be denied. An Order consistent with this Memorandum Opinion will be issued this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: August 6, 2010